UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FUJIKURA COMPOSITE AMERICA, INC.,<br><br>                              Plaintiff,<br><br>v.<br><br>ALEXANDER DEE, an individual, and 3V PERFORMANCE LLC, a California Limited Liability Company, doing business as ARETERA GOLF,<br><br>                              Defendants. | Case No.: 24-CV-782 JLS (MSB)<br><br>**ORDER:**<br><br>**(1) GRANTING PLAINTIFF'S MOTION TO STRIKE DOCKET ENTRY NOS. 53 AND 53-1 (ECF No. 60),**<br><br>**(2) GRANTING DEFENDANTS' ADMINISTRATIVE MOTION TO FILE UNDER SEAL (ECF No. 58),**<br><br>**(3) GRANTING PLAINTIFF'S ADMINISTRATIVE MOTION TO FILE UNDER SEAL (ECF No. 61), AND**<br><br>**(4) SETTING BOND AMOUNT**<br><br>(ECF Nos. 53, 58, 60, 61) |

Presently before the Court are two Administrative Motions to File Under Seal ("Pl.'s First Mot. to Seal," ECF No. 53; "Pl.'s Second Mot. to Seal," ECF No. 61) filed by Plaintiff Fujikura Composite America Inc. ("Fujikura"). Plaintiff additionally filed a Motion to

Strike Docket Entry Nos. 53 and 53-1 ("MTS," ECF No. 60).

Also before the Court is Defendants Alexander Dee and 3V Performance LLC d/b/a Aretera Golf's ("Aretera") (collectively, "Defendants") Administrative Motion to File Under Seal ("Defs.' Mot. to Seal," ECF No. 58). None of the above Motions have been opposed. Having carefully considered the Parties' arguments, the documents in question, and the relevant law, the Court **GRANTS** Plaintiff's Motion to Strike, **GRANTS** Defendants' Motion to Seal, and **GRANTS** Plaintiff's Second Motion to Seal. The Court also sets the bond amount at $200,000.

## BACKGROUND

The Court incorporates the background set forth in the October 31, 2024 Order, but repeats the relevant parts here for convenience. *See* ECF No. 51 ("Order").

On June 28, 2024, the Court issued a preliminary injunction enjoining Defendants from "engag[ing] in any further disclosure or use of Plaintiff's trade secret golf shaft technology." ECF No. 30 ("Prelim. Inj. Order") at 29. In their moving papers regarding the preliminary injunction, the Parties did not address Federal Rule of Civil Procedure 65(c), which requires the movant to "give[] security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Nevertheless, in the Preliminary Injunction Order, the Court noted that the Parties agreed at oral argument that consideration of an appropriate bond amount was necessary, so it ordered the Parties to file a joint bond proposal within twenty-one (21) days of the date of the Preliminary Injunction Order. Prelim. Inj. Order at 30. But to put off further delay of the injunction's commencement, the Court held that the "injunction will commence seven days from the date of this [Preliminary Injunction] Order, regardless of whether a bond has yet been set or paid." *Id.* at 28.

The Parties purportedly engaged in good faith settlement talks for the next several months, twice asking the Court for joint extensions of time to file their joint bond proposal, *see* ECF No. 31; ECF No. 37, and twice receiving said extensions, *see* ECF No. 32; ECF No. 38. But the settlement talks ostensibly hit a standstill and, on October 17, 2024, the

Parties eventually submitted their Joint Bond Proposal ("Proposal," ECF No. 46), which arrived at the Court accompanied by a flurry of activity.

As the Parties were unable to reach an agreement as to the proper bond amount in this matter, they lodged the Proposal in the form of two separate proposals—one from each side—along with an argument in support thereof. Coupled with the Proposal were declarations supporting each Party's respective position. Defendants included a declaration by Michel de Fontaine, co-founder of Aretera. *See* ECF No. 46-2. And Plaintiff included a declaration by David Schnider, President and CEO of Fujikura. ECF No. 46-3.

Along with the Proposal, Defendants filed a Motion to Seal Joint Bond Proposal. *See* ECF No. 47 ("Mot. to Seal Prop."). Claiming that the Proposal and de Fontaine Declaration "disclose materials and information that the Defendants have designated as" either "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY" under Federal Rule of Civil Procedure 26(c) and the Order Granting Joint Motion for Protective Order ("Protective Order," ECF No. 44), Defendants argued they would be at "substantial risk of serious harm" if the documents are not sealed. Mot. to Seal Prop. at 2. In particular, Defendants believed good cause existed to seal the documents because they "disclose and reference specific financial data about Defendants' costs, sales, profit margins, and other financial data, the disclosure of which can allow competitors to undercut Defendants' pricing strategy." *Id.* at 3. These materials arrived on October 17, 2024. *See generally* Docket.

Although the Motion to Seal Joint Bond Proposal went unopposed, the same cannot be said about a Supplemental Declaration of Michel de Fontaine ("Initial Suppl. de Fontaine Decl.," ECF No. 48) that Defendants lodged the very next day. Defendants submitted the Supplemental Declaration to "provide[] additional context to Defendants' existing proposal stated in the Joint Bond Proposal," clarifying certain inventory and profit estimates from the de Fontaine Declaration accompanying the Proposal. Mot. to Seal Prop. at 2. But Defendants qualified their submission by explaining that the "Supplemental

Declaration does not change Defendants' proposed bond amount or the arguments stated in the Joint Bond Proposal . . . ." *Id.* Like the first de Fontaine Declaration, the Supplemental de Fontaine Declaration contained similarly sensitive "cost, pricing, and profit margin data," so Defendants sought to file the Supplemental Declaration under seal, too. *Id.*

Plaintiff took issue with Defendants' Supplemental Declaration and filed an Objection several days later. *See* ECF No. 49. Plaintiff claimed to be "prejudiced by Defendants' last-minute lodging" because it was submitted "without giving Plaintiff any opportunity to review the Supplemental Declaration prior to submission to this court and to update its own portion of the Joint Bond Proposal accordingly." *Id.* at 2. Because Plaintiff "would have amended or supplemented its portion" of the Proposal if it had seen the Supplemental Declaration in advance, it requested "to file its own supplemental material responsive to the Supplemental Declaration." *Id.* at 3.

On October 31, 2024, the Court issued the Order, granting Plaintiff's request to file a supplemental brief of its own but denying Defendants' Motions to Seal both with respect to the Joint Bond Proposal and the Initial Supplemental de Fontaine Declaration because the seal requests were not narrowly tailored. *See* Order. Accordingly, the Court set deadlines for Plaintiff to file a supplemental brief addressing Defendants' Supplemental Declaration and for Defendants to renew their Motions to Seal. *See id.* at 9–10. It is the Parties' filings in response to the October 31, 2024 Order that are now at issue.

## MOTION TO STRIKE

Plaintiff timely filed its Supplemental Brief but now seeks to strike said filing. The Supplemental Brief was responsive to the Initial Supplemental de Fontaine Declaration, which Defendants claimed contained sensitive business information warranting the sealing thereof. Pl.'s First Motion to Seal at 2. To fully engage with the Initial Supplemental de Fontaine Declaration, Plaintiff's Supplemental Brief similarly included Defendants' sensitive business information, prompting Plaintiff to make an attempt at filing its Supplemental Brief under seal as well. *See id.* However, "[t]hrough inadvertence or error,"

Plaintiff's attempt went awry by improperly filing the information subject to the seal request on the public docket.  ECF No. 61-1 at 2

Although the Court has already walked the Parties through proper sealing procedures at least twice, it will do so again one final time.  The Court first explained those procedures in Section 14.4 of the Protective Order.  Protective Order at 16–17.  There, the Court directed the Parties to comply with Section 2.j of the Electronic Case Filing Administrative Policies and Procedures Manual for the United States District Court for the Southern District of California ("ECF Manual") and Civil Local Rule 79.2.  *Id.* at 17.  Section 2.j of the ECF Manual says, in relevant part:

> Any document submitted for filing under seal in civil cases must be accompanied by a motion authorizing such filing.  In civil cases the motion to seal will be filed as a public document . . . The proposed document to be filed under seal must be lodged electronically . . . ."

Office of the Clerk, United States District Court for the Southern District of California, *Electronic Case Filing Administrative Policies and Procedures Manual*, § 2.j (July 22, 2024).  The Protective Order goes on to say that "[i]n addition, a Party must file a redacted version of any document that it seeks to file under seal."  Protective Order at 17.

Putting these directives together yields a simple formula.  To seal a document or a portion thereof, a party must publicly file a motion to seal accompanied by (1) a clean, unredacted version of the document lodged electronically and (2) a proposed redacted version of the document publicly filed on the docket.[1]  The Court walked the Parties through this procedure for a second time in its October 31, 2024 Order.  Order at 8–9.

Yet Plaintiff managed the get the procedure exactly backwards.  Attached to Plaintiff's First Motion to Seal, publicly filed on the docket, is a clean, unredacted version

---

[1] Of course, there may be alternative permutations of this formula if, for example, a motion to seal itself warrants sealing.  The Court trusts that the Parties will more carefully review the relevant procedures if a scenario of this sort arises in the future.

of Plaintiff's Supplemental Brief.  Contemporaneously lodged alongside the Motion is the proposed redacted version of the same.  Because the publicly filed brief "includes content deemed and designated by Defendants to be highly confidential and proprietary in nature," Plaintiff requests the Court strike the improper filing subject to its inherent authority to do so.  ECF No. 61-1 at 2.[2]

Because it was filed in error and contains sensitive information potentially prejudicial to Defendants, the Court exercises its discretion and **GRANTS** Plaintiff's Motion to Strike.  *See Hougas v. Comm'r Soc. Sec. Admin.*, 2020 WL 13490919, at *3 (D. Ariz. Dec. 15, 2020) (noting the Court's "inherent authority to regulate the conduct of attorneys who appear before it" and "promulgate and enforce the rules for the management of litigation" (quoting *Spurlock v. Fed. Bureau Investigation*, 69 F.3d 1010, 1016 (9th Cir. 1995))); *see also Relevant Grp., LLC v. Nourmand,* 2022 WL 3096871, at *1 (C.D. Cal. May 17, 2022) ("The Court expects organized, error-free filings from all parties and will not hesitate to strike future filings that unnecessarily complicate the docket.").  However, having already admonished the Parties once that they "would be better off exerting their resources gaining familiarity with the directives of the Court" only to find that admonishment go unheeded, the Court issues the stern warning that ***any further violations of the Local Rules or Court orders "may be grounds for imposition by the Court of any and all sanctions authorized by statute or rule or within the inherent power of the Court.***"  Civ. L.R. 57.1(a).  Moreover, to the extent that filing responsibilities fall on paralegals, legal assistants, or other nonlawyers, both Parties are reminded of their ethical obligation to "make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer . . . ."  California Rules of Professional Conduct, Rule 5.3(b).

/ / /

---

[2] Upon recognizing its mistake, Plaintiff contacted the Court to request viewing privileges of the improper filing to be restricted to the Parties and Court.  The Court agreed to this request.

**MOTIONS TO SEAL**

## I. Legal Standard

"[T]he courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). "Unless a particular court record is one 'traditionally kept secret,' a 'strong presumption in favor of access' is the starting point." *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (citing *Foltz v. State Farm Mut. Auto Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003)). "The presumption of access is 'based on the need for federal courts, although independent—indeed, particularly because they are independent—to have a measure of accountability and for the public to have confidence in the administration of justice.'" *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1096 (9th Cir. 2016) (quoting *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995)).

A party seeking to seal a judicial record bears the burden of overcoming the strong presumption of access. *Foltz*, 331 F.3d at 1130. The showing required to meet this burden depends upon whether the documents to be sealed relate to a motion that is "more than tangentially related to the merits of the case." *Ctr. for Auto Safety*, 809 F.3d at 1102. When the underlying motion is more than tangentially related to the merits, the "compelling reasons" standard applies. *Id.* at 1096–98. When the underlying motion does not surpass the tangential relevance threshold, the "good cause" standard applies. *Id.*

To show good cause, the moving party must make a "particularized showing . . . with respect to any individual document," *San Jose Mercury News, Inc. v. U. S. Dist. Ct., N. Dist. (San Jose)*, 187 F.3d 1096, 1103 (9th Cir. 1999), that "specific prejudice or harm will result if no protective order is granted," *Phillips ex rel. Ests. of Byrd*, 307 F.3d 1206, 1210–11 (9th Cir. 2002). "Simply mentioning a general category of privilege, without any further elaboration or any specific linkage with the documents, does not satisfy the burden." *Kamakama*, 447 F.3d at 1184. Likewise, "[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning," are also insufficient.

*Phillips*, 307 F.3d at 1211.  Further, if the movant wishes to seal an entire document, it must show that the possibility of prejudice or harm would not be defeated by redacting only the sensitive portions of said document.  *See In re Roman Cath. Archbishop*, 661 F.3d 417, 425 (9th Cir. 2011); *Foltz*, 331 F.3d at 1137.

## II.    Analysis

The documents Plaintiff and Defendants wish to seal—the Supplemental Brief containing argument as to the appropriate bond amount and the two Declarations by Aretera co-founder Michel de Fontaine in support of Defendants' argument in the Proposal—fall comfortably under the "good cause" standard, which applies to material that is no more than tangentially related to the merits of this case.  *See Ctr. for Auto Safety*, 809 F.3d at 1096–98.  Thus, the Parties must make a particularized showing that specific prejudice or harm will result if the Motions to Seal are not granted.  *See Phillips*, 307 F.3d at 1210–11.

In renewing their Motion to Seal, Defendants rely on the Order, where the Court already found that Defendants sufficiently articulated a basis for establishing "good cause" based on the "heightened risk that competitors may attempt to undercut Defendants' pricing strategy if financial data about their 'costs, sales, profit margins, and other financial data' is disclosed."  Order at 7 (citing Mot. to Seal Prop. at 3).  As the Court held, because "[c]ourts routinely find it appropriate to seal documents revealing 'a company's financial records, such as receipts, accounts receivables, and expenses,'" the Declarations contain sufficiently sensitive commercial data to justify sealing certain portions therein.  *Id.* at 7–8 (citing *Apex.AI, Inc. v. Langmead*, No. 5:23-CV-02230-BLF, 2023 WL 4157629, at *2 (N.D. Cal. June 23, 2023)).  Whereas the original seal request was not narrowly tailored because Defendants had not proposed specific portions of the Declarations that they believed required redactions, the renewed request is now narrowly tailored such that it provides a suitable balance between the public's right to inspect judicial records and Defendants' legitimate business interest in maintaining the financial data's confidentiality.  Accordingly, the Court **GRANTS** Defendants' Administrative Motion to File Under Seal.

Plaintiff, on the other hand, makes the same misguided argument in its Administrative Motion to Seal that the Court already rejected when that argument was previously made by Defendants.  Plaintiff argues that portions of its Supplemental Brief should be sealed because they contain information from Defendants' Supplemental de Fontaine Declaration that "Defendants have designated . . . as 'HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY' under Federal Rule of Civil Procedure 26(c) and the Order Granting Joint Motion for Protective Order."  Pl.'s Second Mot. to Seal at 2.  However, as the Court said once before, that argument "falls flat" because "a blanket protective order . . . is insufficient to demonstrate that the Court has independently determined 'good cause' to exist specifically with respect to the Declarations."  Order at 7 (citing *Stoba v. Saveology.com, LLC*, No. 13-cv-02925-BAS(NLS), 2016 WL 12575501, at *2 (S.D. Cal. Mar. 31, 2016)).  Nevertheless, the same independent basis for establishing "good cause" from Defendants' Motion applies equally to Plaintiff's Motion, so the Court **GRANTS** Plaintiff's Second Administrative Motion to File Under Seal so as not to prejudice Defendants by Plaintiff's oversight.[3]

## BOND AMOUNT

Federal Rule of Civil Procedure 65(c) states that a preliminary injunction may issue "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  Despite this mandatory phrasing, Rule 65 "invests the district court 'with discretion as to the amount of security required, if any,'" and allows a court to "dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct."  *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) (quoting *Barahona–Gomez v. Reno*, 167 F.3d 1228, 1237 (9th Cir. 1999)).

---

[3] It is clear that Plaintiff has not been litigating this case with the careful attention that it deserves, needlessly wasting the Court and the public's resources by failing to thoroughly review the Court's orders. Plaintiff would be well-advised to review both the previous filings on this case's docket and Civil Local Rule 2.1, which prescribes the standards of professionalism before this Court, before proceeding in this matter.

The "party affected by the injunction" bears the burden of presenting evidence so that the Court may properly "exercise its discretion in setting the amount of the bond." *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 883 (9th Cir. 2003).

The Parties propose widely disparate amounts as to what bond the Court should set. On the one hand, Defendants request a bond of $3,481,891 based on historical revenue data resulting from Alpha One golf club shaft sales in the three months leading up to the preliminary injunction. Proposal at 2. Defendants extrapolate that revenue over the expected nineteen-month duration of this lawsuit, factoring in expected sales growth and the "cost of goods for additional Alpha One golf club shafts that would have been manufactured and sold but for the injunction." *Id.* at 3. On the other hand, Plaintiff requests a nominal bond of $10,000, or alternatively, a maximum bond of $167,881.91. *Id.* Plaintiff arrives at this request based on Aretera's status as an early-stage startup company, a status typically yielding minimal profits, if any at all. *Id.* at 4. Plaintiff faults Defendants for relying primarily on historical revenue data, as opposed to historical profit data, and argues that a generous estimate of Aretera's profit margins would put lost profits well below the inflated projection submitted by Defendants. *Id.* at 5.

The Court is not persuaded by Defendants' arguments. Defendants' lost revenue projections are not particularly probative as courts more typically set a security amount based on lost profits rather than lost revenue.[4] *See, e.g.*, *Elite Licensing, Inc. v. Thomas Plastics, Inc.*, 250 F. Supp. 2d 372, 391 (S.D.N.Y. 2003) (rejecting the defendant's bond proposal based on gross sales in favor of a bond in line with the defendant's projected profits); *Sanofi-Synthelabo v. Apotex, Inc.*, 470 F.3d 1368, 1385–86 (Fed. Cir. 2006)

---

[4] Defendants cite to *Russell v. Caesar*, No. C 01-2478 MJJ, 2001 WL 1835165 (N.D. Cal. Dec. 20, 2001), for the proposition that the security amount should be based on revenue rather than profits. Proposal at 2. But unlike here, the bond amount in that case was driven down because the defendant was able to resell the same product it was enjoined from selling under different branding, minimizing the impact of overhead and other costs. *See id.* at *8. In any event, courts more typically set bond based on profits rather than revenue, and Defendants already conceded at oral argument that the bond amount "should be extrapolated from the Alpha One line's *profits* to date." Prelim. Inj. Order at 28 (emphasis added).

24-CV-782 JLS (MSB)

(affirming the district court's bond determination based on "potential lost profits"). Aretera's historical revenue data could have possibly informed future profit projections, but Defendants make a conclusory leap from historical revenue to future profits without sufficient explanation to allow the Court to independently assess the probability of Aretera realizing those profits. Defendants supplied the Supplemental de Fontaine Declaration in an apparent effort to tie these two distinct metrics together, but the Court remains puzzled by certain dubious results implicit in the data.[5] Accordingly, the Court does not credit the de Fontaine Declarations nor Defendants' arguments relying upon them.

However, despite harboring doubt as to the magnitude of Aretera's future lost profits resulting from the preliminary injunction, the Court accepts the premise that Aretera would have realized at least some profit and experienced at least some amount of growth during the pendency of this litigation. Because of the general preference for "erring on the high side" in setting bond, the Court will apply favorable assumptions to Aretera's historical revenue data based on the industry standards cited by Plaintiff.[6] *See Chartwell Staffing Servs. Inc. v. Atl. Sols. Grp. Inc.*, 2019 WL 2610975, at *3 (C.D. Cal. May 28, 2019) (citing *Mead Johnson & Co. v. Abbott Lab'ys*, 201 F.3d 883, 888 (7th Cir. 2000)) (setting bond at $2 million where the defendants requested $30 million but "fail[ed] to establish a

---

[5] As an example, the Supplemental de Fontaine Declaration projects the number of months it would take Aretera to sell its remaining inventory of Alpha One golf club shafts. Suppl. de Fontaine Decl. ¶ 6. One can divide the remaining inventory by that projection to calculate the number of shafts Aretera could reasonably sell in a given month. Assuming that Aretera sold an average of that monthly sales figure between April 2024 and June 2024, one can then calculate the revenue from each shaft sold during that three-month period, approximating the average sales price. But comparing that average sales price to other net profit margin figures implicit in Defendants' argument produces results that the Court finds extremely unlikely for an early-stage startup company, i.e., nearly the entire purchase price is net profit. *See* Suppl. Br. at 2.

Even if the Court's back-of-the-napkin approximations lack precision, it is only because Defendants have failed to persuasively articulate the rationale underlying their proposed bond amount.

[6] These assumptions relate to typical net profit margins in the golf shaft industry, Aretera's status as an early-stage startup company, and Aretera's use of third-party manufacturers. Proposal at 5–6.

basis for a proper amount"). Accordingly, the Court adopts Plaintiff's alternative bond proposal of $167,881.91, which reflects an optimistic view of Aretera's historical monthly profits deriving from the Alpha One golf club shaft extrapolated over the anticipated nineteen-month duration of the lawsuit. Further, the Court will make an upward adjustment to account for a reasonable amount of growth as Defendants argue would have been likely.[7] Thus, the Court will impose a $200,000 bond.

## CONCLUSION

In light of the foregoing, the Court **GRANTS** Plaintiff's Motion to Strike Docket Entry Nos. 53 and 53-1 (ECF No. 60). Further, the Court **GRANTS** Defendants' Administrative Motion to Seal (ECF No. 58) and **GRANTS** Plaintiff's Second Administrative Motion to Seal (ECF No. 61). The Clerk of the Court **SHALL FILE** ECF Nos. 59 and 62 under seal.

Finally, Plaintiff **SHALL** (1) file with the Clerk of the Court an undertaking in the form of a bond, certified or cashier's check, or cash in the amount of $200,000 as security for any damages that may result if Defendants are found to have been wrongfully restrained and (2) file proof of such action on this case's docket. Failure to complete both of these actions within ten (10) days of the date this Order is electronically docketed will result in dissolution of the preliminary injunction.

**IT IS SO ORDERED.**

Dated: December 5, 2024

_Janis L. Sammartino_
Hon. Janis L. Sammartino
United States District Judge

---

[7] The Court acknowledges that Aretera may be well-positioned to mitigate the impact of the preliminary injunction by offering a new line of golf club shafts, potentially placing downward pressure on the appropriate bond amount. *See Aristocrat Techs., Inc. v. Light & Wonder, Inc.*, No. 2:24-cv-00382-GMN-MDC, 2024 WL 4415361, at *9 (D. Nev. Sept. 20, 2024). However, the mitigative effect is difficult to quantify at this stage, so the Court refrains from adjusting the security amount based on this factor.